UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

DS HEALTHCARE GROUP, INC.
and MEDITAGO HOLDINGS LLC,

    Plaintiffs

v.

Wyatt Co., LTD d/b/a DR.Forhair;
DRForHair,
@dr.forhair_official.us, and
LEE & GEN GLOBAL CORP.,
Each an Individual, Partnership,
Business Entity, or
Unincorporated Association

    Defendants.
_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs, DS HEALTHCARE GROUP, INC. ("DS Healthcare") and MEDITAGO HOLDINGS, LLC ("MEDITAGO") (collectively, "Plaintiffs"), by and through undersigned counsel, hereby sue Defendants, Wyatt Co., LTD d/b/a Dr.Forhair, LEE & GEN GLOBAL CORP., @dr.forhair_official.us, and DRForHair (herein, the "Defendants"). In support of their claims, Plaintiffs allege as follows:

**NATURE OF THE ACTION**

1. This is an action for federal trademark infringement, common law unfair competition, common law trademark infringement pursuant to 15 U.S.C. §§1114, 1116, and 1125(a), and The All Writs Act, 28 U.S.C. § 1651(a). This claim arises out of Defendants' refusal to cease the use of the "DS Labs" mark and the DS Labs trade name despite receiving a cease and desist letter and despite acknowledging Plaintiff's ownership of the mark and exclusive rights thereto.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1331 and 1338 because this action arises under the Lanham Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

3. Defendant Wyatt Co., Ltd. d/b/a Dr.ForHair (henceforth "Wyatt") is subject to personal jurisdiction in this district because it directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district, including through solicitation in the State of Florida and including through Internet based e-commerce stores accessible in Florida.

4. Defendant Lee & Gen Global Corp. (henceforth "L&G") is subject to personal jurisdiction in this district because it directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district, including through solicitation in the State of Florida and including through Internet based e-commerce stores accessible in Florida.

5. Defendant @dr.forhair_official.us (henceforth the "Instagram Handle") is subject to personal jurisdiction in this district because it directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district, including through solicitation in the State of Florida and including through Internet based e-commerce stores accessible in Florida.

6. Defendant Dr.ForHair (henceforth the "Amazon Store") is subject to personal jurisdiction in this district because it directs business activities toward and conducts business

with consumers throughout the United States, including within the State of Florida and this district, including through solicitation in the State of Florida and including through Internet based e-commerce stores accessible in Florida.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Wyatt and L&G are engaged in activities and causing harm within this district by engaging in unfair trade practices in this district, by advertising, offering to sell, and selling infringing products into this district, and because a substantial part of the events giving rise to the claims occurred in this district.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the Amazon Store is engaged in activities and causing harm within this district by engaging in unfair trade practices in this district, by advertising, offering to sell, and selling infringing products into this district, and because a substantial part of the events giving rise to the claims occurred in this district.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the Instagram Handle is engaged in activities and causing harm within this district by engaging in unfair trade practices in this district, by advertising, offering to sell, and selling infringing products into this district, and because a substantial part of the events giving rise to the claims occurred in this district.

## THE PLAINTIFFS

10. Plaintiff MEDITAGO is a Delaware limited liability company with its principal place of business located in Miami, Florida. MEDITAGO is the owner of various trademarks in the field of haircare, skincare, and cosmetics, including the distinctive "DS Labs" and "DS Laboratories" trademarks.

11. Plaintiff DS HEALTHCARE GROUP, INC. is a Florida corporation with its principal place of business in Miami, Florida. DS HEALTHCARE GROUP, INC. manufactures, sells and distributes haircare, skincare, and cosmetic products (the "Products") out of its South Florida headquarters, under exclusive license from Plaintiff MEDITAGO to commercialize MEDITAGO trademarks throughout various territories around the globe.

12. Plaintiffs' trademarked Products are sold through various channels of trade within the State of Florida, including this district.

13. Defendants, through the sale and offer to sell infringing haircare products bearing Plaintiff's "DS Labs" brand (the "Infringing Products"), are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and thereby causing Plaintiffs harm within this jurisdiction.

## THE ONLINE STORES

14. Dr.ForHair and @dr.forhair_official.us (collectively, the "Online Stores") are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside or operate in foreign jurisdictions. The Online Stores have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). The Online Stores target their business activities towards consumers throughout the United States, including within this district, through

the operation of Internet e-commerce stores via the online marketplace website Amazon.com and the social media application, Instagram.

15. The Online Stores are past and present controlling forces behind the sale of products bearing infringements of Plaintiffs' trademarks as described herein.

16. The Online Stores engage in trademark infringement and unfair competition by selling the Infringing Products through deceit on the Internet in the United States.

17. The Online Stores are advertising, offering for sale, and selling the Infringing Products on the Internet to consumers within the United States and this district, including through the following Amazon Seller ID: "Dr.ForHair" (the "Seller ID"), and through the following Instagram handle, "@dr.forhair_official.us."

18. The Online Stores are infringing on the intellectual property rights of Plaintiffs.

19. Further, the Online Stores are using Plaintiffs' famous names and/or trademarks to drive Internet consumer traffic to their e-commerce stores and decreasing the size and value of Plaintiffs' legitimate marketplace at Plaintiffs' expense.

20. The Online Stores directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling Infringing Products to consumers within the United States and this district.

**Wyatt and L&G**

21. Wyatt is a legal entity which, upon information and belief, operates in foreign jurisdictions, or redistributes products from the same or similar sources in those locations. Wyatt has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Wyatt targets its business activities towards consumers throughout the United States, including within this district, through direct or indirect control of the Online Stores, through direct or indirect control of the

Internet e-commerce store at drforhair.com, and through the operation of Internet e-commerce stores via the online marketplace website Amazon.com and Costco online.

22. Wyatt directly engages in fraudulent business practices to the Plaintiffs' detriment by advertising, offering for sale, and selling Infringing Products to consumers within the United States and this district through Internet-based e-commerce stores such as Amazon.com and via Costco online.

23. L&G is a corporation registered under the laws of the State of California.

24. In concert with Wyatt, L&G targets its business activities towards consumers throughout the United States, including within this district, through the operation of Internet e-commerce stores via the online marketplace website Amazon.com.

25. Further, in concert with Wyatt, L&G directly engages in fraudulent business practices to the Plaintiffs' detriment by advertising, offering for sale, and selling Infringing Products to consumers within the United States and this district through Internet-based e-commerce stores such as Amazon.com and via Costco online.

## COMMON ALLEGATIONS OF FACT

26. Plaintiff MEDITAGO is the owner of various trademarks in the field of haircare, skincare, and cosmetics, including the distinctive DS Labs and DS Laboratories trademarks.

27. MEDITAGO is the owner of several trademark registrations (the "Registrations") as reflected in the United States Patent and Trademark Office ("USPTO") for the "DS Labs" and "DS Laboratories" trademark, including registration numbers 6693320 (DS Labs), 5200746 (DS Labs), 3460674 (DS Laboratories) and 4758774 (DS Laboratories). These registered trademarks that are affected by the actions of the Defendants named herein.

28. Based upon its distribution licenses, Plaintiff DS HEALTHCARE GROUP, INC. has expended significant resources in developing, marketing, advertising, and otherwise promoting its brand and trademarks.

29. Plaintiffs have carefully monitored and policed the use of their trademarks and have never assigned or licensed their trademarks to any Defendant in this matter.

30. In January 2022, Plaintiffs discovered that the Defendants are promoting, selling, offering for sale and distributing the Infringing Products within the United States without the authorization of Plaintiffs, through various Internet based e-commerce stores including, upon information and belief, the Online Stores, through Amazon.com, and through the dr.forhair.com website operated by Wyatt.

31. As a result, on January 13, 2022, Plaintiffs sent a cease and desist letter (the "Cease and Desist Letter") to Defendant Wyatt Co., Ltd., demanding that Wyatt "[c]ease all use of the DS Labs Mark or any similar variations, including as a name or mark, or component of a name or mark, or a domain name or tagline, statement or slogan, on or before January 31, 2022[.]"  A true and correct copy of the Cease and Desist Letter is attached as Exhibit "2".

32. On January 25, 2022, Defendant Wyatt sent an email correspondence through its counsel, Balmatt Law PLLC (the "Response Email"), stating that "… Wyatt Co. is taking *immediate action* to discontinue use of the term [DS Labs] on its products and online." (Emphasis added).  A true and correct copy of the Response Email sent by Wyatt's counsel is attached as Exhibit "3".

33. The January 25, 2022 Response Email attached a letter from Defendant Wyatt Co., Ltd (the "Wyatt Acknowledgment") dated January 20, 2022, acknowledging the Plaintiff's letter and indicating, with regards to the DS Labs mark, that Wyatt "…came to a conclusion that

it is *inappropriate to maintain the subject tagline* with the po*tential to cause damage to your brand value*[.]".  (Emphasis added).  A true and correct copy of the Wyatt Acknowledgment is attached as Exhibit "4".

34.     With respect to the January 31, 2022 cease and desist deadline set forth in the Cease and Desist Letter, the Acknowledgment Letter expressed that Wyatt would "…*try our best to handle this matter by January 31st* but we ask for your kind understanding that there may be a *slight delay* in completely settling the issue."  See Exhibit 4.  (Emphasis added).

35.     Further, in its Acknowledgment Letter, Defendant Wyatt undertook to "edit all the images of all products listed on amazon.com" and to "close dr.forhair.com website until the image change is complete."  See Exhibit 4.

36.     Presently, over one year after acknowledging that Wyatt's infringement can cause damage to Plaintiffs' brand value and committing to take "immediate action to discontinue to use" of the DS Labs mark, Wyatt and the various Defendants, in concert, are continuing the blatant use of the DS Labs mark.

37.     Examples of the Infringing Product listings and advertisement are attached as Composite Exhibit "5" (as to Defendants' website), Composite Exhibit "6" (as to Defendants' Instagram Online Store), Composite Exhibit "7" (as to Defendants' Amazon.com Online Store), Exhibit "8" (as to Costco.com), and Composite Exhibit "9" (Press Releases).

38.     Plaintiff received infringing product in the State of Florida on October 4, 2023, ordered through the DRForHair Amazon Online Store and therefore has ascertained that the Defendants are actively selling Infringing Products in this district.   See Exhibit "10."

39.     The Infringing Products that are being sold to United States consumers by the Defendants are likely causing confusion and eroding consumer goodwill towards the products.

Case 1:23-cv-23881-RKA   Document 1   Entered on FLSD Docket 10/11/2023   Page 9 of 20

40. Not only does Defendants' Infringing Product reflect Plaintiffs' Mark, but it specifically reads "Approved by: DS Labs," thus adding to consumer confusion and misleading the public into believing that Defendants' product is somehow "approved" by Plaintiffs and backed by Plaintiffs' well-known brands, DS Labs and DS Laboratories.

41. Through the sale and offer to sell Infringing Products, and through their refusal to comply with Plaintiffs' cease and desist letter even while acknowledging the same, the Defendants are directly and unfairly competing with Plaintiffs' economic interests in the State of Florida and causing Plaintiffs harm within this jurisdiction.

42. The Plaintiffs are seeking injunctive and other equitable relief as a result of the actions of the Defendants. A Verified Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Memorandum of Law in Support Thereof is being filed contemporaneously with this Complaint or shortly thereafter.

43. All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

**GENERAL ALLEGATIONS**

44. Plaintiff MEDITAGO is the owner of several trademark registrations as reflected in the United States Patent and Trademark Office ("USPTO") for the "DS Labs" and "DS Laboratories" trademark, including registration numbers 6693320 (DS Labs), 5200746 (DS Labs), 3460674 (DS Laboratories) and 4758774 (DS Laboratories) (collectively, the "Marks"). These registered trademarks that are affected by the actions of the Defendants named herein. True and correct copies of the Certificates of Registration of the Marks, together with the corresponding assignments to MediTago Holdings LLC, are attached as Composite Exhibit "1" hereto.

9

45. The Marks have been used in interstate commerce to identify and distinguish Plaintiffs' products for an extended period of time and serve as a symbol of Plaintiffs' quality, reputation and goodwill. The Marks are well-known and famous and have been for many years. Indeed, Plaintiffs have expended substantial time, money and other resources developing, advertising and otherwise promoting the Marks. The Plaintiffs' Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

46. Plaintiffs have extensively used, advertised, and promoted the Marks in the United States and abroad in association with the sale of quality products.

47. The Plaintiffs' Marks have achieved secondary meaning as identifiers of quality goods as a result of Plaintiffs' advertisement, promotion, and sale of such goods thereunder.

48. As a result of Plaintiffs' efforts, members of the public readily identify Plaintiffs' merchandise bearing or sold under the Marks as being quality product.

49. The Defendants are selling Infringing Products in blatant disregard of Plaintiffs' intellectual property rights and with full knowledge thereof.

**CAUSES OF ACTION**

**COUNT I**
**TRADEMARK INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT**
**(15 U.S.C. § 1114)**

50. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 hereof as if fully set forth herein.

51. Plaintiff Meditago's USPTO registration embodying the "DS Labs" and "DS Laboratories" marks are in full force and effect and are entitled to protection under both federal law and common law.

52. Defendants, without authorization from Plaintiffs, are using in interstate commerce the "DS Labs" mark.

53. The foregoing acts of Defendants are intended to cause, have caused, and/or are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' products are authorized by Plaintiffs, or are licensed to Defendants by Plaintiffs, or are DS Labs products.

54. Defendants have acted with knowledge of Plaintiffs' ownership of the "DS Labs" and "DS Laboratories" marks and the Registrations.

55. Pursuant to 15 U.S.C. §1114:

> (1) "Any person who shall, without the consent of the registrant—
>
>> **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>>
>> **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

56. By their actions, Defendants have used in commerce the "DS Labs" mark which is owned by Plaintiffs, and which is also registered to Plaintiff in the course of marketing, offering for sale and selling its own goods.

57. Defendants' actions include the use of the DS Labs mark on their website, products, advertising, among other things.

11

58. Defendants' actions have caused confusion and are likely to cause confusion between Defendants' goods and Plaintiffs' goods and to mislead and deceive the consuming public, including without limitation, Plaintiffs' customers.

59. Defendants' concurrent infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' infringing goods.

60. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

61. Defendants' above-described illegal actions constitute infringement of Plaintiffs' Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

62. Upon information and belief, Defendants have made and will continue to make substantial profits and gains through their improper use of the "DS Labs" mark, to which Defendants are not entitled, in law or in equity.

63. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

64. Plaintiffs' have suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

65. In light of the foregoing, Plaintiffs are entitled to and demand injunctive relief prohibiting Defendants from using the "DS Labs" mark or any marks identical and/or confusingly similar thereto for any purpose pursuant to 15 U.S.C. §1116; to recover from

Defendants all damages, including all gains, profits and advantages obtained by Defendants as a result thereof, in an amount to be proven at trial; costs of this action pursuant to 15 U.S.C. §1117(a); attorneys' fees and treble damages pursuant to 15 U.S.C. §1117(b); and/or statutory damages pursuant to 15 U.S.C. §1117(c).

## COUNT II
### (Trademark Infringement Pursuant to 15 U.S.C. §1125(a)(1)

66. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 hereof as if fully set forth herein.

67. Pursuant to 15 U.S.C. §1125(a):

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

68. Defendants falsely advertise that their goods and services are the same as (or interchangeable with) Plaintiffs' goods and services, by using the "DS Labs" mark, when in fact Plaintiffs' goods and services are not interchangeable with or the same as Defendants' goods and services.

69. Defendants' use of the "DS Labs" mark constitutes a false designation of origin and a false representation or representation that Plaintiffs certify the quality and authenticity of Defendants' goods and services, when, in fact, Plaintiffs do not. Thus, this activity by Defendants is likely to deceive the public.  Notably, the context in which Plaintiffs' mark is utilized confusingly indicates "approved by DS Labs."

70. Defendants' use of the "DS Labs" mark in connection with the unauthorized advertising, promotion, and sale of its goods and services misrepresents the nature, characteristics, qualities, and origin of Defendants' goods and services because it suggests that its products are owned by, are interchangeable with, or are the equivalent of, Plaintiffs' goods and services, when, in fact, this is false.

71. Defendants' use of the "DS Labs" mark in connection with the unauthorized advertising, promotion, and sale of its goods and services is likely to cause confusion, mistake, or deception.

72. Defendants' acts of unfair competition are willful, deliberate, and intended to reap the benefit of the goodwill and reputation associated with the "DS Labs" mark.

73. Defendants' unauthorized and deceptive use of the "DS Labs" mark is material and likely to influence customers to purchase the products that Defendants sell, as consumers are likely to believe that the products that Defendants advertise using the "DS Labs" mark are Plaintiffs' products when they are not.

74. Alternatively, Defendants' use of the "DS Labs" mark in connection with the unauthorized advertising, promotion, and sale of its goods and services is likely to dilute the value of the "DS Labs" mark.

75. The "DS Labs" mark is so associated with Plaintiffs' goods that the use of the same or similar marks by Defendants constitutes a false representation that its goods came from the same source as Plaintiffs' goods, which is false.

76. Defendants' unauthorized use of the "DS Labs" mark in advertising and promotion infringes on the "DS Labs" mark.

77. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not entitled to in law or equity.

78. Upon information and belief, Defendants intend to continue its infringing acts, unless restrained by this Court.

79. Defendants' acts have damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

80. In light of the foregoing, Plaintiffs are entitled to and demands injunctive relief prohibiting Defendants from engaging in the advertisement, offer for sale, or sale of the any products or services bearing the "DS Labs" mark pursuant to 15 U.S.C. § 1116; to recover from Defendants all damages, including all gains, profits, and advantages obtained by Defendants as a result thereof, in an amount to be proven at trial; costs of this action pursuant to 15 U.S.C. § 1117(a); and enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a), since Defendants willfully, intentionally, maliciously, and in bad faith infringed on Plaintiffs' mark.

## COUNT III
## COMMON LAW UNFAIR COMPETITION

81. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 hereof as if fully set forth herein.

82. This is an action against all Defendants based on their unauthorized promotion, advertisement, distribution, sale and/or offering for sale of goods bearing marks that infringe upon Plaintiffs' Marks in violation of Florida's common law of unfair competition.

83. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing one or more of Plaintiffs' Marks that constitute trademark infringement based on Defendants' unauthorized use of Plaintiffs' Marks. Defendants are also using infringements of one or more of the Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine results across an array of search terms and/or (ii) visibility on the Internet.

84. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' products by their use of the Plaintiff's Marks.

85. Defendants' unfair competition is willful, deliberate, and intended to reap the benefit of the goodwill and reputation associated with the "DS Labs" mark.

86. Defendants' unfair competition through their unauthorized marketing and sale of products bearing the "DS Labs" mark violates Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

87. Upon information and belief, Defendants have made, and continue to make substantial profits and gains to which they are not entitled in law or equity.

88. Upon information and belief, Defendants intend to continue its infringing acts, unless restrained by this Court.

89. Defendants' acts have damaged and will continue to damage Plaintiffs.

90. Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT

91. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 hereof as if fully set forth herein.

92. This is an action for common law trademark infringement against all Defendants based on their unauthorized promotion, advertisement, offering for sale, and sale of goods bearing one or more of the Plaintiffs' Marks that are materially different than the products offered and sold by Plaintiffs within the United States. Plaintiffs are the owners of all common law rights in and to the Marks.

93. Defendants' infringing activities are likely to cause and are actually causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' infringing goods bearing Plaintiffs' Mark.

94. Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs DS Healthcare Group, Inc. and Meditago Holdings LLC demand judgment on all counts of this Complaint and an award of equitable relief and monetary relief against the Defendants as follows:

a. Entry of temporary restraining order, as well as preliminary and permanent injunction, enjoining the Defendants, their agents, representatives, servants, employees and all those acting in concert or participation therewith, from selling

      or offering to sell Infringing Products, and from otherwise unfairly competing with Plaintiffs.

b. Entry of an order pursuant to 28 U.S.C. 1651(a), The All Writs Act, requiring the Online Stores and any other alias seller identification names being used or controlled by Defendant to engage in the business of marketing Infringing Products be disabled by each Defendant and the applicable governing Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including Amazon.com and Costco.com.

c. Entry of an order that, upon Plaintiffs' request, any Internet marketplace website operators who are provided with notice of the injunction identify any e-mail address known to be associated with Defendants' Online Stores immediately cease facilitating access to any or all e-commerce stores through which Defendants engage in promotion, offering for sale and/or sale of Infringing Products;

d. Entry of an order that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to Amazon.com and Costco.com, permanently remove from the multiple platforms any and all listings and associated images of goods bearing Plaintiffs' Marks via the e-commerce stores operating under the Seller ID;

e. Entry of an Order that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators, including Amazon.com and Costco.com, who are provided with notice of the injunction, immediately cease fulfillment of and

    sequester all Products from the Defendants and surrender those goods to Plaintiffs to be destroyed.

f.   Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' unfairly competitive activities.

g.   Entry of an order requiring Defendants to pay damages, including all gains, profits and advantages obtained by Defendants as a result of the actions herein described, in an amount to be proven at trial, plus costs of this action pursuant to 15 U.S.C. §1117(a) and attorneys' fees and treble damages pursuant to 15 U.S.C. §1117(b); and/or statutory damages pursuant to 15 U.S.C. §1117(c).

h.   Entry of judgment for compensatory damages for Defendants' fraudulent activities.

i.   Entry of an order that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to Amazon.com and its related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Online Stores or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) to be surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

j.   Entry of an award of pre-judgment interest on the judgment amount.

k.   Entry of an order for any further relief as the Court may deem just and proper.

Dated: October 11, 2023.

    Respectfully submitted,

        **RECALDE LAW FIRM, P.A.**
        *Attorneys for Plaintiffs*
        1815 Purdy Ave, Second Floor
        Miami Beach, FL 33139
        Ph: 305-792-9100
        By: /s/ Rafael Recalde
        Rafael Recalde, Esq.
        FBN: 60040
        Primary Email: rafael@recaldelaw.com
        Secondary Email: geremy@recaldelaw.com